[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17117
Non-Argument Calendar

_____

D.C. Docket No. 8:15-cv-00748-PRL

REBECCA SUE SIMS,

Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 27, 2017)

Before JORDAN, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Rebecca Sims appeals the district court's order affirming the Commissioner of Social Security's decision to deny her application for disability insurance benefits. On appeal, Sims argues that substantial evidence does not support the administrative law judge's ("ALJ") determinations that (1) she had the residual functional capacity to perform light work with certain limitations; (2) her testimony about her symptoms and limitations was not credible; and (3) given her residual functional capacity, she could perform her past work as an insurance agent. After careful review, we conclude that substantial evidence supports the ALJ's determinations and affirm the district court's judgment in favor of the Commissioner.

## I.    BACKGROUND

Sims applied for disability benefits claiming that she was disabled as of August 2010 because she suffered from back and neck pain, high blood pressure, and carpal tunnel syndrome. After her application was denied, Sims requested and received a hearing before the ALJ.

## A.    The Hearing Before the ALJ

At the hearing, Sims described her physical impairments, which included neck and back pain as well as carpal tunnel syndrome. She testified that she had pinched nerves in her lower back and described how pain radiated from her neck down her shoulder. With regard to the carpal tunnel syndrome, she explained that

2

she had several surgeries on her hands and that she could no longer type on a keyboard because her hands locked up.  Sims rated her pain as 10 out of 10 when she took no pain medicine and six or seven out of 10 when she took pain medicine.  She said that she was unable to lift even a two pound weight and that if she was going to be out of her home for more than half an hour, she needed to use a cane for support.

In addition to considering her testimony, the ALJ reviewed Sims's medical records.  These records showed that since at least 2003 Sims had experienced back and neck pain.  To treat the pain, she underwent a spinal fusion surgery in 2004.  But her chronic neck and back pain returned after the surgery.  As a result, Sims received ongoing medical care for her neck and back pain and used medication to manage the pain.

Around the time that Sims claims she became disabled, she was being treated by a pain specialist, Dr. Raymon Priewe.  Notes from Priewe's clinic during this time reflect that Sims reported increased function and decreased pain and impairment with her pain medication.  At subsequent appointments, Sims sometimes reported that the medication was controlling her pain, but other times complained about her pain.

In December 2011, Dr. Robert Shefsky examined Sims in connection with her disability claim.  He found that her hand and finger dexterity were intact and

3

she had full bilateral grip strength as well as a full range of motion in her elbows, forearms, and wrists bilaterally.  Shefsky noted that Sims used a cane when walking for balance but observed that her gait was normal and remained the same when she walked without her cane.  He observed that she had difficulty walking on her heels and toes and could not do a squat.  His physical examination revealed that she had a full range of motion in her shoulders bilaterally but a reduced range of motion in her neck and lumbar spine.  He also found that she had a negative straight leg test; no evidence of subluxations, contractures, ankylosis, or thickening; stable, nontender joints with no redness, heat, swelling or effusion; and full strength in her upper and lower extremities.

In November 2012, Sims was involved in a motor vehicle accident that she claims exacerbated her back and neck pain.  After the accident, x-rays and a CT scan showed, among other things, mild to moderate disc space narrowing in her lumbar spine and degenerative disc disease.  Dr. Lora Brown treated Sims after the accident.  Brown's examination revealed that Sims had a reduced range of motion and tenderness in her cervical spine and lumbar spine.  Brown observed that Sims was able to stand and walk on her toes and heels.  Brown ultimately recommended that Sims continue conservative care and core strengthening as well as receive lumbar epidural spinal injections.

4

After the accident, Sims received chiropractic care from Dr. Kelle Ozmon over the course of several months.   In the progress notes for many of these appointments, Ozmon gave Sims an excellent assessment, meaning he anticipated Sims would continue to improve and have no permanent injury.  But when Ozmon finished treating Sims, he rated Sims's prognosis and response to treatment as poor.  Because of her condition, he advised that she avoid lifting more than 20 pounds and refrain from prolonged sitting, standing, or bending.  Ozmon identified no restrictions on Sims's walking.

Sims also submitted medical records regarding her carpal tunnel syndrome. These records showed that beginning in 2001, she had several surgeries on her fingers to address the syndrome.  After surgeries in 2009 on two fingers, Sims told her doctor that her fingers were better than they had been before the surgery, but she was not completely satisfied with one finger's function.  The physician examined Sims and found that she had no impairment in either hand.  The next year, a physician noted that her carpal tunnel syndrome was not severe.  In 2013, a chiropractor performed nerve conduction studies, which revealed mild to moderate carpal tunnel syndrome.

The records before the ALJ also included the opinion of a state agency medical consultant, Dr. Walter Harris, who concluded that Sims was capable of occasionally lifting up to 20 pounds and standing and/or walking for a total of

5

about six hours in an eight hour work day.[1]  Harris based his opinions on his review of Sims's medical records, including x-rays and an MRI, as well as Sims's statements that she could perform light household chores, including laundry and cooking.  He found that her use of a cane was not medically necessary.

Sims also introduced into evidence documentation showing that she received a parking placard from Florida.  But she introduced no evidence about what type of parking permit she received or why Florida issued her the permit.

## B.    The ALJ's Decision

After the hearing, the ALJ issued a written decision denying Sims's application for disability insurance benefits.  He determined that Sims had severe impairments, including cervical and lumbar degenerative disc disease.  But the ALJ found that Sims's carpal tunnel syndrome was not a severe impairment and caused no more than minimal limitations.  To reach this conclusion, the ALJ relied on the 2009 findings by Sims's treating physician that she had no impairment in her fingers, Shefsky's examination showing that Sims had full grip strength and a full range of motion in her elbows and forearms, and her physician's determination that her carpal tunnel syndrome was not severe.  The ALJ then concluded that Sims's impairments or combination of impairments did not meet or equal the criteria in any listing.

---

[1] Harris issued his opinion before Sims's motor vehicle accident.

6

The ALJ then considered Sims's residual functional capacity and concluded that she was capable of performing light work, except that she should: never climb, ladders, ropes, or scaffolds; no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and avoid concentrated exposure to hazards. The ALJ considered Sims's testimony about her symptoms. Although Sims's impairments could reasonably be expected to cause her symptoms, the ALJ concluded that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely persuasive because they were out of proportion to the limitations that would be reasonable related to her impairments.

Relying on Shefsky's examination, the ALJ found that the objective medical evidence failed to provide strong support for Sims's allegations. Although the ALJ acknowledged that Shefsky's examination showed Sims had a reduced range of motion in her neck and lumbar spine, the ALJ found that the examination generally was unremarkable. The ALJ noted that Sims used a cane to assist her walking but concluded that it was an item of convenience and not medically necessary. The ALJ also noted that there was no opinion evidence from a treating or examining physician that Sims had limitations greater than those set forth by the ALJ. Furthermore, the ALJ noted that around the alleged onset of disability date, Sims reported increased function and decreased pain to one of her physicians.

7

The ALJ also considered the opinion of the state medical consultant, Harris, who after reviewing Sims's medical records concluded that she could lift up to 20 pounds and stand and/or walk for up to six hours a day. The ALJ gave partial weight to Harris's opinion but applied greater postural limitations than those Harris had identified.

The ALJ acknowledged that Ozman, Sims's chiropractor, gave an opinion that Sims should not lift more than 20 pounds and should refrain from prolonged sitting, standing, or bending. The ALJ explained that his conclusions about Sims's residual functional capacity were not inconsistent with Ozman's opinion.

Given the residual functional capacity assessment, the ALJ concluded that Sims was capable of performing her past relevant work as an insurance sales agent. Because Sims could perform her past relevant work, the ALJ concluded that she was not disabled.[2]

## C.    District Court Proceedings

Sims then filed an action in federal district court, asking the court to reverse the Commissioner's decision. The magistrate judge issued an order affirming the Commissioner's decision.[3] The magistrate judge concluded there was substantial evidence to support the ALJ's residual functional capacity assessment, adverse

---

[2] Sims requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied her request for review. Sims raises no claim on appeal regarding the Appeals Council's denial of review.

[3] The parties consented to having a magistrate judge decide the case.

8

credibility determination, and finding that Sims could perform her past relevant work as an insurance sales agent.  This is Sims's appeal.

## II.    STANDARD OF REVIEW

When, as here, an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  We review the Commissioner's decision to determine whether it is supported by substantial evidence, but we review *de novo* the legal principles upon which the decision is based.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Even if we find that the evidence preponderates against the [] decision, we must affirm if the decision is supported by substantial evidence."  *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore*, 405 F.3d at 1211.  Our limited review precludes us from "deciding the facts anew, making credibility determinations, or re-weighing the evidence."  *Id.*

## III.    ANALYSIS

An individual who is disabled may be eligible for disability benefits. 42 U.S.C. § 423(a)(1)(E).  To determine whether a person is "disabled," an ALJ applies a five-step, sequential process and examines whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe and medically

9

determinable impairment; (3) has an impairment or combination of impairments that satisfies the criteria of a "listing"; (4) can perform her past relevant work in light of her residual functional capacity; and (5) can adjust to other work in light of her residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4).

Sims argues that the ALJ erred when he concluded in step four of this analysis that Sims could perform light work subject to certain exertional limitations and thus could perform her past work as an insurance sales agent.  Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  *Id.* § 404.1567(b).  It may entail "a good deal of walking or standing" meaning the work may involve "standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." *Id*; SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).  Sims contends that there is no substantial evidence to support the ALJ's conclusion that she had the residual functional capacity to perform such work and also challenges the ALJ's finding that her statements about her limitations were not credible.  We consider these arguments in turn.

## A.    Substantial Evidence Supports the ALJ's Assessment that Sims Could Perform Light Work with Certain Limitations.

Sims argues that substantial evidence does not support the ALJ's finding that she could perform light work subject to the identified limitations.  She claims that

10

the ALJ failed to consider the limitations that resulted from her carpal tunnel syndrome because the ALJ misstated evidence related to this condition. She also asserts that the ALJ ignored evidence showing that she had greater limitations and that as a result substantial evidence does not support the ALJ's conclusion. She further challenges the ALJ's conclusion that his residual functional capacity assessment was consistent with her chiropractor's opinion about her limitations.

### 1. The ALJ Did Not Misstate Evidence About Sims's Carpal Tunnel Syndrome.

First, Sims argues that the ALJ erred in assessing her residual functional capacity by failing to consider the limitations that arise from her carpal tunnel syndrome. The ALJ found that her carpal tunnel syndrome caused no more than minimal functional limitations and stated that he relied on a 2013 progress note from Sims's physician reporting that her carpal tunnel syndrome was not severe. But Sims asserts that the ALJ misstated evidence because the progress note the ALJ cited is from 2010, not 2013. Even if the ALJ incorrectly identified the date of the progress note, this progress note still supports that Sims's carpal tunnel syndrome caused no more than minimal functional limitations because the physician found that the carpal tunnel syndrome was not severe. And Sims does not contend that her syndrome became worse during the intervening three years.

Instead, to support her position that her carpal tunnel syndrome caused more than minimal limitations, Sims points out that her chiropractor found that she was

11

suffering from mild to moderate carpal tunnel syndrome in 2013.  But the chiropractor's finding that Sims was suffering from carpal tunnel syndrome did not address what limitations Sims experienced as a result of the syndrome.  Indeed, this finding is entirely consistent with the ALJ's conclusion that her carpal tunnel syndrome caused only minimal limitations.  Substantial evidence supports the ALJ's conclusion that the carpal tunnel syndrome caused Sims no more than minimal functional limitations.

## 2.    The ALJ Did Not Err by Ignoring Key Evidence.

Second, Sims argues that in concluding that she could perform light work, the ALJ ignored key evidence showing that she had more severe limitations.  She claims that the ALJ failed to consider certain medical records, statements she made showing that her condition had not improved, and the fact that Florida gave her a disabled parking permit.  But the ALJ's decision shows that he considered all the evidence, and given the deferential substantial evidence standard, we cannot say that the ALJ erred.

In concluding that Sims could perform light work, the ALJ relied on, among other things, Shefsky's report from his examination of Sims.  Sims argues that the ALJ's statement that Shefsky's examination was unremarkable is not supported by substantial evidence because Shefsky noted that Sims had a reduced range of motion, the inability to squat, and difficulty walking heel to toe.  But the ALJ

12

acknowledged Shefsky's finding that Sims had a reduced range of motion. Importantly, the ALJ did not characterize all of Shefsky's findings as unremarkable but instead noted that his examination was "generally unremarkable." ALJ Decision at 8 (Doc. 14-2).[4] Given the significant number of areas where Shefsky's examination showed no issues, the ALJ's conclusion that Shefksy's examination was generally unremarkable is supported by substantial evidence.

In finding that Sims could perform light work, the ALJ also relied on evidence showing that her medical condition improved over time. More specifically, the ALJ relied on a progress note in which Sims reported to her physician that her medication had made her more functional. The progress note further reflected that Sims reported her pain was only four out of 10. Sims argues that the ALJ erred in relying on this progress note because at the same visit Sims reported increased lower back pain, which would not support a finding of improvement. But our review is limited to determining whether the ALJ's decision was supported by substantial evidence. We conclude that this deferential standard is satisfied because a reasonable person could accept the progress note showed that

---

[4] Citations to "Doc." refer to docket entries in the district court record in this case.

her condition had improved given Sims's rating of her pain and statement that the medication improved her functioning.  *See Moore*, 405 F.3d at 1211.[5]

Sims also argues that the ALJ erred by failing to consider records from other physicians, which she contends show that she was unable to perform light work. Although an ALJ need not specifically refer to every piece of evidence, the ALJ's decision must contain sufficient detail so that we can conclude that the ALJ considered the claimant's medical condition as a whole in assessing her residual functional capacity assessment.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  And we conclude that the ALJ adequately considered Sims's condition as a whole because the ALJ's decision makes clear that he reviewed and considered the entire record.  Indeed, in his decision, the ALJ cited to many different medical records, supporting his statement that he considered the entire record.

We recognize that the record contains medical evidence that could support a conclusion that Sims was unable to perform light work.[6]  But again, our review in

---

[5] To support the conclusion that Sims's condition improved over time, the ALJ also relied on a progress note in which Sims reported that she was able to perform independently all activities of daily living.  Sims argues for the first time on appeal that the ALJ should not have relied on this progress note because it was incomplete and unsigned.  But Sims failed to raise this argument in the district court or to the ALJ.  In fact, in the district court, instead of arguing that this progress note should be disregarded, Sims cited to it as evidence that she was disabled. Because Sims argues for the first time on appeal that the progress note should be disregarded as incomplete, she failed to preserve this argument, and we will not consider it. *See Access Now v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (explaining that an issue "raised for the first time on appeal will not be considered by this court" (internal quotation marks omitted)).

this appeal is limited to considering whether substantial evidence supported the ALJ's conclusion, meaning we address only whether there was evidence that a reasonable person would accept as adequate to support the conclusion that Sims could perform light work. *See Moore*, 405 F.3d at 1211. Applying this deferential standard, we conclude that the evidence was sufficient to support the ALJ's conclusion that Sims could perform light work.

Sims also argues that the ALJ erred in failing to consider evidence that she received a disabled parking permit because she was unable to walk without using a cane. To support this argument, she points to a document showing that Florida issued her a parking placard. But this document demonstrates only that Florida issued her some form of parking placard. It does not show whether it was a disabled parking permit or, even if it was, on what basis Florida found that she was disabled. No other evidence or testimony in the record explains the nature of the parking placard. With this limited record, the evidence does not support Sims's conclusion that Florida awarded her a disabled parking permit because she was

---

[6] We note that the ALJ did not expressly address whether the medical records contained opinions and if so, what weight he assigned to those opinions. We have previously explained that an ALJ must state what weight he has assigned to medical opinions. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). A medical opinion is a "statement[] from [an] acceptable medical source[] that reflects judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(1). Because Sims has not argued either to our court or below that the progress notes contained medical opinions, we will assume for purposes of this appeal that the progress notes do not contain medical opinions, meaning the ALJ was not required to indicate the weight assigned to them.

unable to walk without using a cane.  Regardless, we still would conclude that substantial evidence supports the ALJ's findings about Sims's residual functional capacity in light of other record evidence, discussed above, showing that Sims could perform light work.

### 3.    The ALJ Did Not Err in Considering the Opinion of Sims's Chiropractor.

Third, Sims argues that the ALJ erred in finding that she could perform light work because the ALJ failed to consider properly the opinions of Ozmon, her chiropractor.  Ozmon opined that Sims was unable to lift more than 20 pounds at a time and should refrain from prolonged sitting, standing, or bending.  The ALJ considered Ozmon's opinions and found that they were "not inconsistent with" his assessment that Sims could complete light work with certain limitations.  ALJ Decision at 9 (Doc. 14-2).  Sims argues that this finding is not supported by substantial evidence because the restrictions Ozmon identified mean that she was unable to perform light work.  We disagree.

The ALJ's residual functional capacity assessment was consistent with Ozmon's opinion about restrictions on Sims's lifting.  Ozmon advised that Sims should not lift more than 20 pounds.  The ALJ's conclusion that Sims could perform light work was consistent with this aspect of Ozmon's opinion.  By definition, light work requires no lifting over 20 pounds.  *See* 20 C.F.R. § 404.1567(b).

16

Similarly, we conclude that the ALJ's assessment was consistent with Ozmon's opinion that Sims should refrain from prolonged sitting, standing, or bending. The Social Security Administration has explained that a job involving light work "requires a good deal of walking *or* standing." SSR 83-10, 1983 WL 31251 (Jan. 1, 1983) (emphasis added). Although Ozmon advised Sims to refrain from prolonged sitting, standing, or bending, he identified no restrictions on walking. Because a light work position could require a good deal of walking, and Ozmon offered no opinion that Sims could not perform such a function, the ALJ's assertion that his assessment was not inconsistent with Ozmon's opinions was supported by substantial evidence.[7]

---

[7] Sims also argues that remand is warranted because the ALJ failed to state what weight was given to Ozmon's opinions. Because a chiropractor is not an "acceptable medical source," an ALJ has no duty to give controlling weight to a chiropractor's views. *See* 20 C.F.R. § 404.1527(a)(1), (c)(2); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (listing chiropractors among those "[m]edical sources who are not 'acceptable medical sources'"). For an "other source," such as a chiropractor, an ALJ generally should "explain the weight given" to the opinion or "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *See* SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). Although the ALJ did not explicitly state the weight given to Ozmon's opinion, the decision contained sufficient detail to allow a reviewing court to follow the ALJ's reasoning.

Nonetheless, Sims argues that under our decision in *MacGregor v. Brown*, the ALJ was required to state what weight was given to Ozmon's opinions. 786 F.2d 1050, 1053 (11th Cir. 1986). In *MacGregor*, we observed that the ALJ failed to assign weight to the opinions of a treating orthopedist and a treating chiropractor. *Id.* We explained that because the ALJ "ignored or failed properly to refute a treating physician's testimony," we would treat the ALJ as having accepted the testimony as true. *Id.* Nothing in *MacGregor* addressed the status of the treating chiropractor's opinion because the chiropractor was not a treating physician. *Id.*; *see also Moore*, 405 F.3d at 1212 (explaining that *MacGregor* addressed only the requirement that the

17

Sims presents several arguments about why the ALJ erred in assessing her residual functional capacity.  But because substantial evidence supports the ALJ's decision, we cannot say that the ALJ erred in concluding that she was able to perform light work.[8]

## B.    Substantial Evidence Supports the ALJ's Credibility Determination.

Sims asserts that the ALJ erred in finding her subjective complaints and limitations not credible.  We see no error.

When a claimant attempts to establish a disability through her own testimony concerning her symptoms, we require "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged [symptom]; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed [symptom]." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  If the record shows that the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work.  20 C.F.R. § 404.1529(a).  In assessing such symptoms and their effects,

ALJ articulate reasons for giving less weight to the testimony of a treating physician).  As such, nothing in *MacGregor* requires an ALJ to assign weight to a treating chiropractor's opinion.

[8] In a related argument, Sims contends that the ALJ erred in concluding that she was able to perform her past work as an insurance sales agent.  This argument rests on the premise that the ALJ erred because Sims was unable to perform light work.  Because there is substantial evidence to support the ALJ's conclusion that Sims can perform light work, we reject this argument.

the ALJ must consider: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms. *Id.* § 404.1529(c)(3). If the ALJ determines that the claimant's statements about her symptoms are not credible, the ALJ must "provide[] a detailed factual basis for his credibility determination," which must be supported by substantial evidence. *Moore*, 405 F.3d at 1212.

Sims asserts that the ALJ erred in failing to credit her statements about her symptoms and degree of limitation because there is medical evidence in the record to support her subjective complaints, which she contends refute the ALJ's assessment of her residual functional capacity. Under a substantial evidence standard of review, Sims must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion. *See Barnes*, 932 F.2d at 1358. Sims failed to carry her burden. Because there is medical evidence to support the ALJ's conclusion that Sims could perform light work, there is substantial evidence to support the ALJ's credibility determination.

19

## IV.　CONCLUSION

For the reasons set forth above, we affirm the district court's order affirming the Commissioner's decision to deny benefits.

**AFFIRMED.**